UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAMES TOOTHE,

          Plaintiff,

          v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

          Defendant.

No.  CV-13-03021-RHW

**ORDER GRANTING PLAINTIFF'S MOTION  FOR SUMMARY JUDGMENT AND ORDER OF REMAND**

      **BEFORE THE COURT** are cross-motions for summary judgment.  ECF Nos.  13, 15.  Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Christopher J. Brackett represents the Commissioner of Social Security (Defendant).  After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

## JURISDICTION

      On November 9, 2010, Plaintiff filed an application for supplemental security insurance income, alleging disability beginning January 30, 1997.[1]  Tr. 20; 190.  Plaintiff indicated that he was unable to work due to depression.  Tr. 189.  The claim was denied initially, denied upon reconsideration, and Plaintiff

---

[1] At the hearing, Plaintiff stipulated to amend the alleged onset date to November 9, 2010.  Tr. 41.

subsequently requested a hearing.  Tr. 85-108.   On June 21, 2012, ALJ Marie Palachuk presided over an administrative hearing at which Harvey Alpern, M.D., Marian S. Martin, Ph.D., vocational expert Diane Kramer and Plaintiff, who was represented by counsel, testified.  Tr. 37-83.  The ALJ denied Plaintiff's claim on July 27, 2012.  Tr. 20-32.  The Appeals Council declined review.  Tr. 1-5.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

At the time of the hearing, Plaintiff was 46 years old and living with a roommate in a trailer, in Selah, Washington.  Tr. 66.  Plaintiff graduated from high school and enlisted in the army.  Tr. 68; 74.  Plaintiff was a regular user of methamphetamine for about 15 years.  Tr. 292.  Plaintiff testified that he last used in August, 2009.  Tr. 64.

Plaintiff has little work history.  He briefly worked as a truck driver.  Tr. 69. While driving the truck, he was involved in an accident, and he still has nightmares about the incident.  Tr. 69.  Plaintiff currently does not drive.  Tr. 70.

Plaintiff said he has no friends, and most days, he stays in his room all day. Tr. 70.  He testified that his roommate does the grocery shopping because when he is in a store, he loses his breath, his chest tightens and he feels like he is getting "closed in on."  Tr. 70.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable construction of the applicable statutes.   *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).   The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is

defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales, 402 U.S. 389, 401 (1971)*. If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an

adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 9, 2010, the amended alleged onset date. Tr. 22. At step two, the ALJ found Plaintiff has the following severe impairments: hepatitis C; hypertension; morbid obesity; depression disorder; anxiety disorder NOS, and amphetamine dependence in reported remission. Tr. 22. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.929(d), 416.925 and 416.926). Tr. 23. The ALJ found that Plaintiff has the residual functional capacity to perform light work with a few exertional and non-exertional restrictions. Tr. 26. The ALJ concluded that Plaintiff had no past relevant work, and considering Plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as Production Assembler, Cleaner I, and Deliverer, outside. Tr. 31. As a result, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 31.

## ISSUES

Plaintiff contends that the ALJ erred by: (1) failing to fully develop the record; (2) determining Plaintiff had little credibility; (3) improperly weighing the medical opinion evidence; and (4) relying upon an incomplete hypothetical. ECF No. 13 at 7-8.

## DISCUSSION

**1.    Developing the Record.**

Plaintiff argues that the ALJ failed to fully develop the record by failing to order an evaluation of Plaintiff by a licensed psychologist.  ECF No. 13 at 17-18.

In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). An ALJ's duty to develop the record further is triggered when the evidence is ambiguous or when the record is inadequate to allow for proper evaluation of the evidence.  *Tonapetyan*, 242 F.3d at 1150.

In this case, testifying expert Marian Martin, Ph.D., expressed uncertainty about the severity of Plaintiff's anxiety symptoms.  Dr. Martin noted Plaintiff's medical history included mild anxiety symptoms, but Plaintiff also consistently asserted that he did better if he did not have to interact with people.  Tr. 50.  Dr. Martin also noted that in October, 2011, Christopher J. Clark, M.Ed., LMHC, and Deborah Blaine, M.S., diagnosed Plaintiff with chronic PTSD and panic disorder with agoraphobia.  Tr. 50.  At the hearing, Dr. Martin testified: "the anxiety symptoms look a lot more severe in [the Clark/Blaine report] than they have throughout the entire rest of the record."  Tr. 51.  As a result, Dr. Martin was uncertain about the severity of Plaintiff's anxiety disorder.  Tr. 51.

Dr. Martin opined that if the Clark/Blaine report (referred to as "14F" below) was credited, Plaintiff would meet Listing 12.06:

> A.    Well, here's where I have my dilemma: if I look at most of the record, except for 14F, he would not meet or equal [a Listing].  If I look at – if I just take the 14F by itself, at face value, he would probably equal [Listing 12.06 – Anxiety Disorders].  The problem I

have here is I have one record that has that in it, and it's October
2011. And I don't have that level of difficulty in any of the other
records.

Q.      (by ALJ) Do we have any physicians, psychologists, or
psychiatrists who has corroborated a diagnosis of PTSD or panic
disorder with agoraphobia?

A.      I don't believe so. I think the only records we have in here are
from, you know, an – there's an LCFW in 1F; there's a Masters level
clinician in, I think, 3F and 5F; and then the last one, the 14F, was by
Christopher Clark, who's got a master's of education. So – an M.Ed.
So I – no, we don't. I'm sorry that was –

Q.      Okay.

A.      -- a long way to answer that question.

Q.      Okay. So from the regulations, from a Social Security
perspective, I do not accept the diagnosis of PTSD or panic disorder
with agoraphobia because we don't have any acceptable medical
source making that diagnosis or affirming that diagnosis after it was
made by a non-acceptable medical source. Keeping that in mind,
would the claimant meet or medically equal any listing?

A.      No.

Tr. 52-53.

Dr. Martin explained that in order to determine if Plaintiff met the Listing,

an examination and objective testing by a licensed psychologist was necessary:

Q. Okay. I mean you're talking, here, about a lot of things that are
hard to glean from this record. Do you think it would help clarify that
situation to have an evaluation by a Ph.D. level evaluator to see if the
diagnosis is more properly anxiety disorder or a panic disorder with
agoraphobia?

A.      Well, I think it would be helpful to have an objective
assessment that would include something like a personality
assessment inventory or an MMPI-2…. Then an in-depth clinical
interview with a licensed psychologist who also has access to some of
these records.

Tr. 62.

ORDER GRANTING PLAINTIFF'S MOTION FOR

SUMMARY JUDGMENT AND ORDER OF REMAND- 6

By opining that an examination by a licensed psychologist would be "helpful" in accurately assessing Plaintiff's mental impairments, Dr. Martin essentially indicated that the current record is insufficient to accurately determine Plaintiff's psychological impairments.  As a result, the ALJ failed to fully develop the record.  This case must be remanded so that a licensed psychologist may examine Plaintiff, administer objective testing and provide an assessment and diagnosis of Plaintiff's psychological impairments.

**2.      Credibility.**

Plaintiff contends that the ALJ erred by finding Plaintiff lacked credibility. ECF No. 13 at 15-17.  The ALJ's credibility analysis is scattered throughout the decision, and much of it is problematic.  Tr. 28-29.  The ALJ found Plaintiff had little credibility because Plaintiff's testimony was inconsistent, his symptoms improved after receiving GAX funds and thus suggested "some degree of secondary gain," he failed to regularly seek treatment, and he failed to comply with his medication regime.  Tr. 28-29.

**a.      Inconsistent Testimony.**

Plaintiff challenges the ALJ's finding that his testimony about his social isolation was inconsistent.  Specifically, Plaintiff argues that his assertion that he rarely, if ever, left his room was consistent because he stopped going to the health club after January, 2010.  ECF No. 13 at 16.  Defendant relies upon a January, 2012, medical record that indicated Plaintiff was regularly working out at a health club.  ECF No. 15 at 14.

During the hearing, Plaintiff testified that he spent "a year and a half in my room," and he had not been "out amongst people," or "around people" for about one year prior to June 21, 2012 hearing.  Tr. 70; 72.  Plaintiff said his last outing was to Safeway about one year prior to the hearing.  Tr. 72.

ORDER GRANTING PLAINTIFF'S MOTION FOR

SUMMARY JUDGMENT AND ORDER OF REMAND- 7

First, the record does not support the ALJ's finding that Plaintiff worked out at a health club five days per week. The note the ALJ referenced was a Yakima Neighborhood Health Services ("YNHS") chart note, dated January 21, 2010. The notation indicated Plaintiff had a "moderate activity level" that included exercise on the treadmill and weights, three to four times per week. Tr. 480. Similarly, the record Defendant referenced was a YNHS chart note dated January 21, 2012. Tr. 459. Significantly, the records from YNHS include three years – from January, 2010, through January, 2012. Tr. 265; 459; 480; 486. Each record contains a section entitled "lifestyle" and each entry under this heading on every record is identical. It appears each record after 2010 was simply a reprinting of information Plaintiff provided at his initial visit. In short, the ALJ and Defendant relied upon outdated information. As a result, the record does not support the ALJ's conclusion that Plaintiff worked out at a health club regularly throughout 2011 and 2012, and substantial evidence does not support this reason for finding Plaintiff lacked credibility.

Second, the record does not support the ALJ's conclusion that "[t]he record as a whole does not support his statement that he stays in his room most of the time as he attends doctor's appointments and goes to NA/AA meetings." Tr. 29. Plaintiff has consistently acknowledged that he attends NA/AA meetings. In the Function Report dated April 29, 2010, Plaintiff indicated that he left his house once per day to attend NA/AA meetings. Tr. 227. He said he attended but participated very little, and stated, "I don't like groups of people and [I] tend to isolate." Tr. 228; 230. Plaintiff also indicated that he shopped once per month for food and hygiene items. Tr. 227. Plaintiff's earliest statements reveal his admission that he leaves the house to attend NA/AA meetings, and thus no inconsistency exists.

Moreover, on February 8, 2011, Plaintiff completed a Disability Report Appeal form. Tr. 196-201. Plaintiff explained that since his December 2010,

report, his anxiety worsened and he began experiencing "anxiety in public. This started when I started to attend AA meetings." Tr. 196. Plaintiff explained that he became nervous, sweaty and his heart beats rapidly. Tr. 196. He also stated that "I used to be more social," and in 2011, his daily activities were reduced to staying home, reading and watching television. Tr. 200.

Plaintiff's assertion that he spends "most" of his time in his room is consistent with attending one meeting per day and occasional doctor appointments. As a result, the ALJ's conclusion that Plaintiff provided inconsistent testimony about his tendency to isolate is not supported by the record, and does not establish that Plaintiff lacked credibility.

**b.      Secondary Gain.**

Next, Plaintiff challenges the ALJ's finding that the improvements of Plaintiff's symptoms after he received GAX funds suggested "some degree of secondary gain." Tr. 28. The ALJ's wording is cryptic, and the full meaning of the ALJ's suggestion is unclear, but it appears the ALJ suspected Plaintiff exaggerated symptoms in order to obtain benefits.

Neither the ALJ nor Defendant point to evidence in the record that supports Plaintiff was malingering or exaggerating his symptoms. And even if the ALJ's characterization of the record were accurate, no support exists in the law of this circuit for the proposition that an ALJ may deem a claimant not credible merely because he has a genuine financial need for the benefits that he seeks. It is difficult to imagine how any claimant would be found credible under that reasoning. Thus, the ALJ's reliance upon Plaintiff's motivation for "secondary gain" as a reason to discount his credibility is not supported by substantial evidence.

**c.      Treatment and Medication.**

Finally, the ALJ found Plaintiff lacked credibility because he failed to comply with recommended medication and he failed to regularly seek treatment.

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND ORDER OF REMAND- 9

Tr. 29.  The Ninth Circuit has held, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996)(quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).  The Ninth Circuit also acknowledges that an unexplained or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony, but this general principle does not apply when a claimant cannot afford the treatment.  *See Regennitter v. Comm'r SSA*, 166 F.3d 1294, 1296 (9th Cir. 1999).

In support of the ALJ's charge that Plaintiff failed to take his medication, the ALJ cites a single report that indicates Plaintiff had not used medication for two months prior to the examination.  Tr. 29; 454.  In that record, Plaintiff explained that he had "no way to get to the pharmacy," and when he sought help, he was told to make an appointment at the Central Washington Comprehensive Mental Health Center, which he did.  Tr. 454.  The ALJ's conclusion that Plaintiff failed to regularly comply with his medication regime was unreasonable because it was based upon a single instance in which Plaintiff explained the reason:  he was unable to find a way to travel to the pharmacy.  As a result, substantial evidence does not support this reason for discrediting Plaintiff.

In sum, the ALJ's reasons for finding Plaintiff had little credibility are not supported by the record.  On remand, the ALJ is directed to provide a new credibility analysis, using proper factors that are supported by specific, substantial evidence in the record.

3.    **Medical Opinion Evidence**.

Plaintiff contends that the ALJ erred by improperly weighing the medical evidence.  ECF No. 13 at 10-15.

a.    **Unacceptable Medical Sources.**

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND ORDER OF REMAND- 10

Plaintiff advances several arguments contending that the ALJ erred by discounting the opinions of Christopher Clark, M.Ed., LMHC, Russell Anderson, LICSW, and Deborah Blaine, M.S.  In evaluating the weight to be given to the opinion of medical providers, Social Security regulations distinguish between "acceptable medical sources" and "other sources."  Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other sources."  20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and SSR 06-03p.  An ALJ is required to consider observations by non-acceptable medical sources as to how an impairment affects a claimant's ability to work.  *Sprague,* 812 F.2d at 1232.  An ALJ must give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala,* 12 F.3d 915 (9th Cir. 1993).  To qualify as germane, a reason for disregarding the testimony of a lay witness must be more than a wholesale dismissal of all such witnesses as a group, but rather must be specific to the individual witness. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996.)

In determining the weight to give an opinion from an "unacceptable" source, the ALJ considers: the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant; the consistency of the source's opinion with other evidence in the record; the relevance of the source's opinion; the quality of the source's explanation of his opinion; and the source's training and expertise.  SSR 06-03p.

### 1.  Christopher Clark, M.Ed., LMHC

On June 28, 2010, Christopher J. Clark, M.Ed., LMHC, completed a check-the-box Psychological/Psychiatric evaluation of Plaintiff.  Tr. 255-62.  Mr. Clark noted Plaintiff's report that his medication provided a "slight increase in motivation and positive mood function."  Tr. 258.  Mr. Clark assessed Plaintiff with marked limitations in three categories: (i) the ability to exercise judgment and

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND ORDER OF REMAND- 11

make decisions; (ii) the ability to interact appropriately in public contacts; and (iii) the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting.  Tr. 258.  Mr. Clark also assessed multiple moderate limitations.  Tr. 258.  Finally, Mr. Clark noted, at that time, Plaintiff was "still early in his drug recovery, and not likely to tolerate the stressors of normal work environment."  Tr. 258.  Philip Rodenberger, M.D., signed Mr. Clark's evaluation as the "releasing authority."  Tr. 260.

The ALJ gave no weight to Mr. Clark's assessment for several reasons.  First, the ALJ found, Mr. Clark's assessment of multiple marked impairments was contradicted by Mr. Anderson's opinion that Plaintiff's impairments were only moderate.  Tr. 28; 246; 260.   The ALJ is responsible for resolving conflicts in medical testimony, and for resolving ambiguities.  *Andrews,* 53 F.3d at 1039.

Second, as the ALJ found, Mr. Clark's assessment failed to account for Plaintiff's symptom improvement.  Tr. 28; 258.  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."   *Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006).

Third, Mr. Clark relied upon the fact that Plaintiff was "early" in his drug recovery, but Plaintiff had stopped using drugs nine months earlier.  Tr. 28.  No evidence established what constitutes "early" in drug recovery.  In the absence of evidence to the contrary, the ALJ's conclusion that nine months was not "early" in a drug recovery was reasonable.  Thus, Mr. Clark's opinion that Plaintiff could not sustain work was premised in part upon a fact that did not exist.

Finally, the ALJ noted that he gave the opinions from both Mr. Clark and Russell Anderson, LICSW, little weight because they were both non-accepted medical sources.  Tr. 28.  As Plaintiff noted, the ALJ must consider observations by non-acceptable medical sources related to how the claimant's impairments

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND ORDER OF REMAND- 12

affect the ability to work. *Sprague*, 812 F.2d at 1232. However, in this case, the ALJ provided several reasons for giving little weight to these opinions. The ALJ's word choice was unfortunate, but the attendant explanation revealed that the other source opinions were not dismissed simply because they were non-acceptable sources.

Plaintiff also argues that the ALJ ignored that Dr. Rodenberger "endorsed" the assessments from Mr. Clark and Mr. Anderson, establishing that they were part of a "treatment team," and thus entitled to be considered as an acceptable source. ECF No. 13 at 13. The evidence does not support Plaintiff's assertion. Instead, Dr. Rodenberger merely signed as "releasing authority."

More significantly, Plaintiff relies on *Gomez v. Chater,* 74 F.3d 967, 971 (9th Cir. 1996), for the proposition that Mr. Clark's opinion should have been accorded the same weight as that of a physician because he worked as part of a treatment team. *Gomez* is no longer good law. See 65 Fed. Reg. 34,950, 34,952 (June 1, 2000). Under the current regulations, a master's of education and licensed mental health practitioner qualifies only as an "other source," irrespective of a relationship to an acceptable medical source. 20 C.F.R. § 416.913(d); *Casner v. Colvin*, 958 F. Supp. 2d 1087, 1097(C.D. Cal.2013). The ALJ was not required to give Mr. Clark's opinions the same weight as if he was an accepted medical source.

As discussed above, on October 10, 2011, Mr. Clark and Deborah Blaine, MSW, diagnosed Plaintiff with chronic Post Traumatic Stress Disorder ("PTSD") and Panic Disorder with agoraphobia. Tr. 446-50. The ALJ gave no weight to the diagnoses on the basis that both examiners were non-accepted medical sources and no other treating or examining providers assessed Plaintiff with these diagnoses. Tr. 29; 448. An "other source" is not qualified to make a diagnosis. *Nguyen,* 100 F.3d at 1467 (medical diagnoses are beyond the competence of other source

witnesses and therefore do not constitute competent evidence).  As a result, Mr. Clark and Ms. Blaine's opinions may not establish PTSD or panic disorder as a medically determinable impairment.  See S.S.R. 06-03p ("other sources" cannot establish the existence of a medically determinable impairment); 20 C.F.R. §§ 404.1513(d), 416.913(d).  The ALJ provided valid reasons for the weight given to the opinions of these medical sources.

### 2.    Russell Anderson, LICSW

Plaintiff contends that the ALJ gave invalid reasons for giving little weight to the opinion of Russell Anderson, LICSW.  ECF No. 13 at 13.

Mr. Anderson completed a Psychological/Psychiatric Evaluation related to Plaintiff on March 29, 2010.  Tr. 243-48.  Mr. Anderson assessed Plaintiff with five marked limitations, and summarized, "[g]enerally, he functions pretty well in a work setting as long as he does not have to interact with others and prefers more solitary type of work."  Tr. 246.

The ALJ gave little weight to Mr. Anderson's assessment, in part, because it was based upon Plaintiff's self-reported symptoms.  Tr. 27.  A medical provider's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan*, 242 F.3d at 1149.

Plaintiff argues that Mr. Anderson's assessment was entitled to more weight because multiple medical records established Plaintiff sought treatment for depression and anxiety.  ECF No. 13 at 14.  However, Mr. Anderson's report indicates that he did not review any of Plaintiff's records.  Tr. 243.  Because Mr. Anderson did not review Plaintiff's medical records, the evaluation had to be based only upon observations and Plaintiff's self- report.  In the accompanying Adult Mental Status Summary, Mr. Anderson checked the box indicating Plaintiff was "depressed," and included what appears to be a quote from Plaintiff:  "been depressed since I was a kid."  Tr. 249.  The notation supports the ALJ's

interpretation that Mr. Anderson relied upon Plaintiff's self-reports in determining the assessed limitations.

The ALJ also found that the report contains few objective findings to support Mr. Anderson's opinion. Tr. 27. An ALJ may discredit medical provider opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings. *Batson*, 359 F.3d at 1195. Mr. Anderson did not administer objective tests or review Plaintiff's medical records, and thus the ALJ's determination that his assessment lacks objective findings is supported by the record.

### b.    John McRae, Ph.D.

Plaintiff alleges that the ALJ erred by rejecting the opinion of Dr. McRae because it was based upon the discredited opinions from Mr. Anderson and Mr. Clark. ECF No. 13 at 10. Plaintiff also argues that the record as a whole supports Dr. McRae's opinions.

On October 30, 2010, Dr. John McRae approved a certification for Medicaid for Plaintiff. Tr. 627. The brief assessment from Dr. McRae states that Plaintiff's prescribing psychiatrist reported Plaintiff's condition was deteriorating, he continued to have moderate mood problems, he may have a persistent organic mental disorder secondary to methamphetamine use, and he "may be likely" to decompensate if he tried to sustain work. Tr. 627.

The ALJ gave no weight to Dr. McRae's opinion because it was "based solely" upon his review of Messrs. Anderson and Clark's opinions. Tr. 28. Also, the ALJ indicated that the evidence as a whole does not indicate Plaintiff would decompensate if he attempted to persist in a work setting. Tr. 28. The ALJ cited records that revealed Plaintiff's condition improved after being approved for GAX. Tr. 28. As decided above, the ALJ did not err in giving little weight to the

assessments from Messrs. Anderson and Clark, and thus Dr. McRae's reliance upon those reports was misplaced. Tr. 28.

Plaintiff cites several records that he contends support Dr. McRae's assessment that Plaintiff may likely suffer an episode of decompensation if he tried to sustain work. ECF No. 13 at 10-11. The records Plaintiff cites are all related to treating Plaintiff's depression. Tr. 268-345. It is not clear from these records that Plaintiff's depression would cause him to decompensate if he attempted to work and Plaintiff points to no other evidence that supports his argument. In the absence of supporting records, the ALJ reasonably concluded that the record did not support Dr. McRae's speculation that Plaintiff would decompensate if he tried to work. As a result, the ALJ did not err in according little weight to Dr. McRae's opinion.

**4.    Incomplete hypothetical.**

Plaintiff also alleged that the ALJ erred by relying upon the vocational expert's answer to a hypothetical that failed to include all of Plaintiff's limitations. ECF No. 13 at 18-20. In light of the disposition of this case, it is not necessary to analyze this issue.

CONCLUSION

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is based on legal error, and requires remand. On remand, the ALJ must fully develop the record regarding Plaintiff's mental impairments by ordering an examination of Plaintiff that includes a personality assessment inventory or an MMPI-2, along with an in-depth clinical interview by a licensed psychologist who has access to Plaintiff's medical records to determine if Plaintiff meets or equals a Listing. If Plaintiff does not meet or equal a Listing, on remand the ALJ is directed to revisit the entire disability analysis. The decision is therefore

REVERSED and the case is REMANDED for further proceedings consistent with this opinion.   Accordingly,

**IT IS HEREBY ORDERED**:

1.      Plaintiff's Motion for Summary Judgment (ECF No. 13) is **GRANTED.**  The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2.      Defendant's Motion for Summary Judgment (ECF No. 15) is **DENIED.**

3.      An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be CLOSED.

**DATED** this 17th day of November, 2014.


_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge